[No. B120256. Second Dist., Div. Seven. Mar. 28, 2000.]

MERCURY INSURANCE COMPANY, Plaintiff and Appellant, v.
ENTERPRISE RENT-A-CAR COMPANY OF LOS ANGELES et al.,
Defendants and Respondents.

**COUNSEL**

Silva, Clasen & Raffalow, Susan M. Hamilton and Michael J. Convey for Plaintiff and Appellant.

John M. Boyko for Defendant and Respondent Enterprise Rent-A-Car Company of Los Angeles.

Black, Compean & Hall, Frederick G. Hall and Vicente Valencia, Jr., for Defendant and Respondent California Insurance Guarantee Association.

## OPINION

**WOODS, J.**—Plaintiff Mercury Insurance Company (Mercury) appeals from judgments entered after the court granted summary judgments in favor of defendants Enterprise Rent-A-Car Company of Los Angeles (Enterprise) and California Insurance Guarantee Association (CIGA). Plaintiff sought to recover payment from defendants of the uninsured motorist (UM) bodily injury benefits it had paid to its insured. We affirm.

### FACTUAL AND PROCEDURAL SYNOPSIS

### I. *Underlying Action*

Mercury is an insurance carrier which offers and sells to members of the general public automobile liability insurance policies which meet the requirements of Insurance Code sections[1] 11580.1 and 11580.2. Mercury issued such a policy (the Policy) to Koji Okamoto for the period February 4, 1993, to August 4, 1993. The Policy provided UM coverage limits of $30,000 per person and $60,000 per accident for the benefit of the insureds of the Policy. Koji's son, Mamoru Gary Okamoto (Okamoto), qualified as an insured under the Policy.

Enterprise is a corporation authorized to do business in California for, among other things, the short-term rental of automobiles to the general public. As owner of the vehicles it rents, Enterprise complies with California's financial responsibility laws by posting a cash deposit pursuant to Vehicle Code section 16054.2.

Enterprise was the owner of a certain 1993 Nissan, which it had rented to Toyet Thi Nguyen pursuant to a rental agreement. Nguyen was insured under a policy issued by National Colonial Insurance Company (National Colonial). National Colonial was a member insured of CIGA.

On May 23, 1993, while Okamoto was a passenger in the rental vehicle operated by Nguyen, the rental vehicle was involved in an accident in Clark County, Nevada. As a result of the accident, on September 1, Okamoto brought an action against Nguyen and Enterprise alleging Nguyen had negligently operated the rental vehicle and that negligence was the cause of Okamoto's injuries. Okamoto alleged he incurred medical expenses and suffered lost earnings totaling at least $68,673.

National Colonial was declared insolvent within one year of the accident, triggering the statutory rights, duties and protections of CIGA.

---

[1]Unless otherwise noted, all statutory references are to the Insurance Code.

On January 7, 1994, Okamoto presented a claim to Mercury under the UM coverage of the Policy.

After Enterprise was served and filed its answer, it engaged in an exchange of pretrial discovery with Okamoto through July 7, after which time, it learned Mercury allegedly had made a payment in settlement of Okamoto's claim.

Before making the payment in settlement of the claims of its insured, Mercury attempted to elicit Enterprise's coverage position for the alleged losses from ELCO Administrative Services (ELCO), Enterprise's in-house claims handling office.

On March 18, Mercury wrote to Enterprise requesting that Enterprise state its position in writing with respect to Okamoto's claim. Neither Enterprise nor ELCO responded to the letter prior to June 14.

Prior to the settlement, on May 26, a Mercury representative telephoned and spoke with Ralph Thompson of ELCO. Thompson "advised that ELCO acknowledged its financial responsibility as owner of the vehicle involved in the accident, however, ELCO's position was that it would pay on the claim only after the case had been tried to a conclusion and a judgment entered against the driver. At this time, Mr. Thompson advised, ELCO might consider paying the judgment and suing the driver for reimbursement."

On May 27, counsel for Okamoto in the underlying action demanded in writing that Mercury settle the UM claim for the $30,000 policy limit. Counsel attached correspondence from CIGA, dated December 9, 1993, advising that pursuant to section 1063.1 et seq., the subject claim would be a "covered claim" only if there was no other insurance available, including collision and UM coverage under any other policy. CIGA's letter stated, "If uninsured motorist coverage is provided under an automobile policy, this claim *must* first be presented to that carrier." (Original italics.)

Also attached to the demand letter was a January 11, 1994, letter from Enterprise to CIGA, which requested that CIGA accept the tender of the defense of the claim, stating in part that Enterprise was "permissibly uninsured" for the loss. The letter quoted parts of the rental agreement:

" 'Owner does not provide, extend, or afford any insurance coverage to renter, passenger, or authorized operator through this agreement.' "

" 'Renter shall defend, indemnify, and hold owner harmless from all losses, liability, damages, injuries, claim demands, lawsuits, etc . . .' "

As a result of Okamoto's claim against the Policy, Mercury paid its $30,000 limit under the UM provisions of the Policy. The settlement of Okamoto's claim was concluded on about June 10. The settlement was concluded pursuant to a release and trust agreement.

The Policy required Okamoto to submit proof to Mercury that Enterprise's ownership financial responsibility limit of $15,000 per person pursuant to Vehicle Code section 17151 had been exhausted by payment of either settlement or judgment. At no time before the settlement was concluded had Okamoto submitted such proof to Mercury.

## II. *This Action*

In June 1996, Mercury filed this action against Enterprise, CIGA and Nguyen, asserting causes of action for declaratory relief, subrogation, equitable indemnity and negligent entrustment of the rental vehicle. Mercury sought to recover the UM benefits of $30,000 it had paid to Okamoto. An amended complaint was filed adding a breach of statutory duty cause of action against CIGA. Enterprise later dismissed Nguyen from the action and dismissed the negligent entrustment cause of action.

The parties stipulated to a set of facts, and each party filed a summary judgment motion. The court denied all three motions.

Subsequently, Enterprise and CIGA filed separate second motions for summary judgment based on the same stipulated facts. The court granted both motions. As to Enterprise, the court ruled the loss vehicle was insured by Enterprise, and as such, was an "insured vehicle" pursuant to section 11580.2, subdivision (p)(1) and an "underinsured" vehicle pursuant to section 11580.2, subdivision (p)(2) in that Enterprise's financial responsibility was for an amount less than the UM limits provided in the Mercury policy, and as Mercury's insured "failed to exhaust, or file proof of the exhaustion of, [Enterprise's] financial responsibility limits, . . . [¶] [Mercury] had no obligation to make payment to its insured" pursuant to section 11580.2, subdivision (p)(3). As a result, Mercury was not entitled to any rights of subrogation, equitable indemnity or contribution.

In respect to CIGA, the court ruled that Mercury's claim was an obligation to an insurer excluded from "covered claims," pursuant to section 1063.2, former subdivision (e) and section 1063.1, former subdivision (c)(4). The claim was not a "covered claim" pursuant to section 1063.1, former subdivision (c)(5), which excludes the portion of any claim in excess of any

applicable limits provided in the now insolvent carrier's policy.[2] The claim was also not a "covered claim" pursuant to section 1063.1, subdivision (c)(9) because it was covered by other insurance, i.e., Enterprise's cash deposit. Lastly, the court ruled the claim did not fall within the statutory exception of section 1063.2, subdivision (c)(1), granting a UM insurer a right of subrogation against CIGA.

After the court entered judgments on both motions, appellant filed a timely notice of appeal from those judgments.

DISCUSSION

I.   *Introduction*

In this action, Mercury sought to recover from Enterprise and CIGA the UM benefits it had paid its insured. The trial court granted summary judgments in favor of Enterprise and CIGA. Summary judgment motions are subject to independent review. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) Mercury contends it is entitled to recover $15,000 each from Enterprise and CIGA.

Mercury posits its payment was made in good faith and it was not a volunteer. Mercury contends the law is unresolved regarding whether UM coverage is triggered solely on the status of the driver or whether both the owner and driver must be uninsured for UM coverage to apply. Mercury further contends that the lack of resolution in the law could have subjected it to a bad faith action if it had not paid its insured.

In support of its position, Mercury cites a treatise in which the authors opine that the Legislature intended for uninsured protection to apply when either one of the responsible parties lacked the requisite coverage so that if either the owner or operator is not insured, the vehicle is uninsured, and the car qualifies as an uninsured motor vehicle under the section 11580.2, subdivision (b). (Clifford & Eisler, Cal. Uninsured Motorist Law (5th ed. 1993) § 6.40, pp. 6-10 to 6-12.)

However, another treatise defines an "uninsured motor vehicle" as including "one for which *no* bodily injury liability insurance is available." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 1999)

---

[2] In 1997, subdivision (c)(2)-(6) of section 1063.1 was renumbered. (See amendments, Deering's Ann. Ins. Code, § 1063.1 (1999 pocket supp.) p. 57.) The subdivisions referred to in the opinion are those in existence at the time the case was heard.

¶ 6:1270, p. GG-15 (rev. #1, 1998), original italics.) That treatise opines: "UMC [uninsured motorists coverage] status depends on the insured status of the vehicle, not the *driver*. Thus, a vehicle that is insured cannot be regarded as 'uninsured' when driven by an uninsured person." (*Id.*, at ¶ 6:1280, p. GG-17 (rev. #1 1998), original italics.) We agree with this position and conclude that the rental vehicle involved in this action cannot be regarded as uninsured.

## II. *Claim Against Enterprise*

■ Mercury contends its payment entitled it to subrogation against Enterprise pursuant to section 11580.2, which Mercury claims grants a broad right of subrogation. (*Mills v. Farmers Ins. Exchange* (1964) 231 Cal.App.2d 124, 128 [41 Cal.Rptr. 650] [in interpreting the UM statutes, courts temper the general rule of strict construction of statutes].)

Section 11580.2, subdivision (g) provides in part: "The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom the claim was paid against any person legally liable for such injury or death to the extent that payment was made."

As owner of the rental vehicle, Enterprise was liable and responsible for the injuries sustained by Mercury's insured due to the negligence of Enterprise's permissive driver. (Veh. Code, § 17150.) ■ Generally, where a rental car company complies with Vehicle Code section 16054.2 by providing a cash deposit, the driver's automobile policy is primary, and the rental company's financial responsibility is secondary. (*Enterprise Rent-A-Car Co. v. Workmen's Auto Ins. Co.* (1997) 58 Cal.App.4th 1543, 1552 [68 Cal.Rptr.2d 725]; see also *Walker v. Belvedere* (1993) 16 Cal.App.4th 1663, 1666 [20 Cal.Rptr.2d 773].) However, in the event of an insolvent primary insurer, the secondary insurer becomes primarily responsible in the absence of specific language to the contrary. (*Ross v. Canadian Indemnity Ins. Co.* (1983) 142 Cal.App.3d 396, 404 [191 Cal.Rptr. 99].) The limit of Enterprise's liability is $15,000 per person. (Veh. Code, § 17151, subd. (a).)

■ In part, section 11580.2, subdivision (a) requires UM coverage be provided whenever the insured is entitled to recover damages "from the owner or operator of an uninsured motor vehicle."[3] "The objective of the [UM] statute is to provide protection to the insured from the injuries caused

---

[3]This title assigned to section 11580.2 by one publisher is "Uninsured motor vehicles; Underinsured motor vehicles." (Deering's Ann. Ins. Code (1996 ed.) § 11580.2, p. 361.)

by the unsafe operation of uninsured motor vehicles." (*Denny v. St. Paul Guardian Ins. Co.* (1987) 196 Cal.App.3d 73, 77 [241 Cal.Rptr. 520].) The Policy defined an uninsured motor vehicle as "a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident, . . ." (Italics added.)

In the instant case, the superior court determined the rental vehicle was an "insured vehicle" because of Enterprise's cash deposit. (§ 11580.2, subd. (p)(1).) The court also determined the vehicle was "underinsured" because Enterprise's financial responsibility (of $15,000) was for an amount less than the $30,000 UM limit in Mercury's Policy. (§ 11580.2, subd. (p)(2).) Accordingly, the court concluded as the insured had failed to exhaust, or file proof of exhaustion, of Enterprise's financial responsibility limits, Mercury had no obligation to pay its insured.[4] (§ 11580.2, subd. (p)(3) [When bodily injury is caused by an underinsured vehicle, "This coverage does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage."].)[5]

Mercury argues it was required to make the UM payment because Enterprise and CIGA refused to accept responsibility for the loss, and pursuant to section 11580.2, subdivision (b), an uninsured vehicle is defined as including a vehicle where "there is the applicable insurance or bond but the company writing the insurance or bond denies coverage thereunder or refuses to admit coverage thereunder except conditionally or with reservation, or an 'underinsured motor vehicle' as defined in subdivision (p)."[6] We conclude Mercury's payment was for an underinsured vehicle pursuant to section 11580.2, subdivision (p), which by its own terms controls if it conflicts with other subdivisions, such as subdivision (b).

The Supreme Court held "the right to subrogation in the underinsured motorist context is not consistent with the plain meaning of the [UM] statute." (*Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 329 [14

---

[4]Mercury was aware before it made the payment that Enterprise had acknowledged its financial responsibility as owner of the rental vehicle.

[5]Mercury suggests that Enterprise and CIGA cannot avoid its right to subrogation by arguing the rental vehicle was an underinsured vehicle, as they stipulated its insured's claim was a UM claim. That the vehicle was underinsured was not only argued in the superior court without objection, but also was part of the basis of the court's ruling.

[6]The Policy echoes this definition.

Cal.Rptr.2d 813, 842 P.2d 112]; see also *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1056 [48 Cal.Rptr.2d 1, 906 P.2d 1057]; Clifford & Eisler, Cal. Uninsured Motorist Law, *supra*, § 11.83, pp. 11-21.5 to 11-21.7.) In *Hartford*, the court reasoned: "Clearly, when faced with an uninsured claim, the insurer must be made aware of any potential judgment or settlement in order to protect its subrogation rights and to prevent double recovery. . . . There is no need, however, for such protection in the underinsured motorist context. This is so because the underinsured carrier is not required to indemnify its insured until the insured has exhausted the limits of the tortfeasor's liability policies by either settling the claim or obtaining a judgment against the tortfeasor and submits proof of payment to the insurer. . . . Under these circumstances, there is no danger of double recovery." (*Hartford, supra*, 4 Cal.4th at p. 329, citations omitted.)

Mercury cites several cases to support its argument it was not a volunteer such that it was entitled to subrogation. (See, e.g., *State Farm Fire & Casualty Co. v. East Bay Municipal Utility Dist.* (1997) 53 Cal.App.4th 769 [62 Cal.Rptr.2d 72]; *United Pacific Ins. Co. v. Hanover Ins. Co.* (1990) 217 Cal.App.3d 925 [266 Cal.Rptr. 231]; *State Farm & Casualty Co. v. Cooperative of American Physicians, Inc.* (1984) 163 Cal.App.3d 199 [209 Cal.Rptr. 251]; *Employers etc. Ins. Co. v. Pac. Indem. Co.* (1959) 167 Cal.App.2d 369 [334 P.2d 658].) Although Mercury argues principles of equitable subrogation should be applied to the statutory right of subrogation, it cites no cases nor discusses any equitable principles which would negate the restrictions imposed on the right of subrogation contained in section 11580.2, subdivision (p). (See, e.g., *Interinsurance Exchange v. Harmon* (1968) 266 Cal.App.2d 758, 761 [72 Cal.Rptr. 352] ["absent the [UM] statute, no right of subrogation would be recognized as to the personal injury claim"]; *West American Ins. Co. v. Chalk* (1989) 213 Cal.App.3d 825, 830 & 830 fn. 5 [261 Cal.Rptr. 837] [the court rejected an argument under general principles of equitable subrogation, noting UM subrogation was statutory not derivative].)

Accordingly, as Mercury's payment was for an underinsured vehicle, it is not entitled to subrogation from Enterprise as it was not obligated to make the payment because its insured had not exhausted Enterprise's coverage.

This holding seems harsh as Mercury was the insurer with the least responsibility for Okamoto's injuries. However, although in a slightly different context, a recent Court of Appeal decision reached a similar ruling based on the language of the statute. (*Farmers Ins. Exchange v. Hurley* (1999) 76 Cal.App.4th 797 [90 Cal.Rptr.2d 697].) In that case, Hurley was

involved in an automobile accident with a rental car operated by an uninsured driver and owned by Dollar Rent-A-Car (Dollar). Hurley pursued Dollar and entered into a stipulation for a judgment in Hurley's favor for $15,000, the statutory limit of Dollar's ownership responsibility. However, the stipulation allowed Dollar to pay $5,000 within two months in full satisfaction of the judgment, and Dollar did so. Hurley then asserted a claim for underinsured motorist benefits against Farmers Insurance Exchange (Farmers), her insurer. The court addressed the issue of a whether a settlement for less than the underinsured policy limit satisfied the exhaustion requirement of section 11580.2, subdivision (p)(3) provided the insured agreed to credit the underinsured carrier with the full policy limits as if they had been paid. (76 Cal.App.4th at p. 799.) In upholding the summary judgment granted in favor of Farmers, the court concluded that "under the plain terms of section 11580.2(p)(3), actual payment of the full policy limits is required." (*Ibid.*)

We note the reluctance of that court to reach its conclusion and also the invitation to the Legislature to consider a modification of the statute, as stated in the separate concurring opinion of two justices.

III.   *Claim Against CIGA*

■   Although "CIGA's general purpose is to pay the obligations of an insolvent insurer, it is not itself an insurer and 'does not "stand in the shoes" of the insolvent insurer for all purposes.' " (*R. J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 600 [1 Cal.Rptr.2d 405].) CIGA is authorized by statute to pay only "covered claims." (§ 1063.1.)

"CIGA is an insurer of last resort and does not assume responsibility for claims where there is any other insurance available." (*R. J. Reynolds Co. v. California Ins. Guarantee Assn., supra,* 235 Cal.App.3d 595, 600; § 1063.1, subd. (c)(9).) "Cases interpreting this language have established that where an insured has overlapping insurance policies and one insurer becomes insolvent, the other insurer, even if only a secondary or excess insurer, is responsible for paying the claim. . . . 'The legislative intent was to create a protection for the public against insolvent insurers when no second insurer is available.' " (235 Cal.App.3d at p. 600, italics omitted.) The other insurance in this case was Enterprise's cash deposit. (§ 11580.9, subd. (h).)

Equitable and legal claims for contribution, indemnity, and subrogation by solvent insurers, such as Mercury, are prohibited by section 1063.1,

former subdivision (c)(4). (*Central National Ins. Co. v. California Ins. Guarantee Assn.* (1985) 165 Cal.App.3d 453, 460-461 [211 Cal.Rptr. 435].) ▆ Mercury contends it is entitled to subrogation against CIGA pursuant to the exception to that general rule contained in section 1063.2, subdivision (c)(1), which provides in part: "A member insurer may recover in subrogation from the association only one-half of any amount paid by such insurer under uninsured motorist coverage for bodily injury or wrongful death (and nothing for payment for anything else), in those cases where the injured person insured by such an insurer has proceeded under his or her uninsured motorist coverage on the ground that the tortfeasor is uninsured as a result of the insolvency of his or her liability insurer (an insolvent insurer as defined in this article), provided that such member insurer shall waive all rights of subrogation against such tortfeasor."

The court determined that Mercury did not fall within that exception. Mercury argues this section provides broader coverage than section 11580.2 and applies where the injured person proceeds under his own UM coverage when either the tortfeasor-driver's liability insurer becomes insolvent or the tortfeasor-vehicle owner's liability insurer becomes insolvent.

The rental vehicle was not an "uninsured motor vehicle" because, at the time of the accident, Enterprise had posted a statutory cash deposit, which is deemed to be a policy of automobile liability insurance covering the owner's statutory financial responsibility for the vehicle. (§ 11580.9, subd. (h).) A self-insured vehicle is excluded from the definition of an "uninsured motor vehicle." (§ 11580.2, subd. (b)(2).)[7]

The UM limit on the Policy issued to Okamoto was $30,000. Enterprise insured the rental vehicle for $15,000. Hence, the rental vehicle was under-insured as it was insured for an amount less than the UM limits carried on the motor vehicle of the injured person. (§ 11580.2, subd. (p)(2); *Lopez v. Allstate Ins. Co.* (1993) 14 Cal.App.4th 1835, 1838-1840 [18 Cal.Rptr.2d 463].)

CIGA is subject to an insurer's subrogation claim only for bodily injury UM payments "and nothing for payment for anything else." "[W]here exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." (*Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) There is a distinction between

---

[7]The Policy echoes this definition.

UM and underinsured motorist coverage. (See § 11580.2, subd. (p).) Even if the underinsured coverage can be equated with payment under UM coverage, Mercury did not come within the exception of section 1063.2, subdivision (c)(1) as Mercury was not obligated to pay its insured until he recovered the $15,000 statutory deposit from Enterprise through judgment or settlement and submitted proof thereof to Mercury. (§ 11580.2, subd. (p)(3).)[8] Thus, Mercury paid its insured with no obligation to do so. Moreover, as discussed above, an insurer does not have a right of subrogation for an underinsured motorist claim, thus expansion of the exception to include underinsured coverage would violate that holding.

DISPOSITION

The judgments are affirmed. Respondents to recover costs on appeal.

Neal, J., concurred.

**JOHNSON, Acting P. J.**—I respectfully dissent.

I would agree with the majority's analysis, reluctantly, were this truly an "*under*insured motorist" case.[1] But this case raises a novel issue, which in my view, when properly resolved leads to the conclusion this is an "*un*insured motorist" case. The implications of this difference are both obvious

---

[8]The Policy echoes this condition.

[1]Were I to agree this is properly characterized as an underinsured motorist case, I would still write separately to add my support to a recent call from two of the justices in another district for legislative attention to the current provisions governing underinsured motorist coverage.

In their concurring opinion to *Farmers Insurance Exchange v. Hurley* (1999) 76 Cal.App.4th 797 [90 Cal.Rptr.2d 697], Justices Gaut and Ward of the Fourth Appellate District, Division Two reluctantly concluded they had to "bow to the inevitable and join in the majority opinion." But then they went on to "encourage the Legislature to consider the wisdom of modifying the section to achieve the apparent purpose of the statute by allowing partial payment by the underinsured motorist's carrier so long as full credit is given to the injured party's carrier for the policy limits of the underinsured motorist." (76 Cal.App.4th at pp. 808-809.)

The instant case illustrates some of the further mischief the present scheme can visit—not only on injured people and insureds, but also insurance companies. Here the injured party's insurance company tried to do the right thing, only to learn "no good deed goes unpunished."

Confronted with a vehicle owner who had refused to pay over its $15,000 cash deposit to the injured party, claiming it was "permissibly uninsured," and with an equally recalcitrant CIGA (California Insurance Guarantee Association) the only other recourse, Mercury Insurance Company considered it had an uninsured motor vehicle on its hands. For reasons explained in this dissent, I believe Mercury was correct in that legal assessment. But at a minimum it ran the risk some court and jury would arrive at that conclusion and award

and profound. What is that novel issue? When a vehicle owner who has elected to post a cash deposit in lieu of insurance refuses a tender of defense, claims to be "permissibly uninsured" (not underinsured) and that the uninsured driver is liable for the vehicle owner's share as well as his own share of the injured person's damages, is that the equivalent of an insurance company "refusing to admit coverage" or only admitting coverage "conditionally or with reservation"? Or, alternatively, is it the substantial equivalent of a company which had written a bond in lieu of insurance "deny[ing] coverage thereunder or refus[ing] to admit coverage thereunder except conditionally or with reservation"?

If so, that would bring this case squarely within the definition of an "uninsured motor vehicle" in Insurance Code section 11580.2, subdivision (b). This definition reads in pertinent part: "As used in this section, 'uninsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance or use of which there is no . . . bond applicable at the time of the accident, *or there is the applicable . . . bond but the company writing the . . . bond denies coverage thereunder or refuses to admit coverage thereunder . . . .*" (Italics added.)

Here, there is at least a triable issue Enterprise Rent-A-Car Company of Los Angeles in essence refused to admit coverage under its $15,000 cash deposit and thereby converted this vehicle from an underinsured motor vehicle to an uninsured motor vehicle. What Enterprise did was the substantial equivalent of an insurer or a company writing a bond "refusing to admit coverage thereunder." As the majority opinion itself recites, when the injured person's lawyer contacted Enterprise, Enterprise claimed to be "permissibly uninsured" (not underinsured) and because of this status claimed it

damages for its failure to honor its insured's uninsured motorist claim. On that basis, Mercury presented its insured with a check for $30,000 representing the policy limits on its uninsured motor vehicle coverage. Now, Mercury tries to recoup some or all of its uninsured payment from the tortfeasors—the vehicle owner and the driver's successor insurer. The vehicle owner no longer claims to be permissibly uninsured but to be underinsured and thus not subject to a subrogation lawsuit by the injured party's insurer to recover the $15,000 cash deposit it posted in lieu of insurance. CIGA, in turn, uses the vehicle owner's underinsured status to deny it has any liability because the tortfeasor was underinsured rather than uninsured.

Because of the present language of the code and the majority's conclusion this is an underinsured rather than uninsured claim, the vehicle owner and CIGA are able to shift the entire burden of their liability to the injured party's insurance company. The statutory language, criticized by our colleagues in the Fourth District, requires an injured party to prove actual payment by the tortfeasors' insurance companies before having any entitlement to the balance owed under his underinsured motorist coverage. That this statutory provision skewered the injured party's insurance company in this case, rather than the injured party himself, is small consolation.

had no duty to defend and asked that "CIGA accept the tender of the defense of the claim, . . ." The letter from Enterprise further quoted language from the rental agreement which purported to place the duty on the uninsured driver to "defend . . . [any] claim demands, lawsuits, etc. . . ." as well as the duty to "indemnify, and hold owner harmless from all losses, liability, damages, injuries . . . ." In other words, don't look to Enterprise's cash deposit for any payment to the injured party, go directly to the uninsured driver. This constitutes a refusal by Enterprise to admit financial responsibility (the equivalent of an insurance or bond company "refusing to admit coverage") for the injured party's damages.

The majority opinion contends the definition of an "uninsured motorist" in Insurance Code section 11580.2, subdivision (b) is somehow superceded by section 11580.2, subdivision (p). The latter provision states: "If the provisions of this subdivision conflict with subdivisions (a) thorough (o), the provisions of this subdivision shall prevail." But my colleagues assume a conflict where one does not exist. Subdivision (p) defines an "insured motor vehicle" and it defines an "*under*insured motor vehicle." The former is one which is insured, self-insured or for which a financial responsibility bond is posted. The latter is one which is insured but for less than the insured's uninsured motorist coverage. But nowhere does this subsection define the third category—an *un*insured motor vehicle. Subdivision (b) does so and, more importantly, is the only subdivision dealing with the situation where the vehicle is insured, but the insurer refuses to admit coverage. And it deals with that situation by moving the vehicle from the insured category to the uninsured motor vehicle category.

This has implications for both respondents, since uninsured motor vehicles are treated differently from underinsured motor vehicles. When a vehicle is uninsured either because neither the vehicle owner nor the driver had insurance (or posted a bond or cash deposit) or because the insurer or entity posting the bond or cash deposit refused to admit coverage or because the insurer has become bankrupt, the uninsured motorist carrier is entitled, indeed duty bound, to pay its injured insured the full amount of his uninsured motorist coverage. The uninsured motorist carrier can then proceed in subrogation against the owner and/or driver, or against the recalcitrant insurer of either, or against an owner or driver who refused to honor its financial responsibility deposit. That carrier also can proceed in subrogation against CIGA for one-half of the amount it paid out on account of the bankruptcy of the driver's insurer. (Ins. Code, § 1063.2, subd. (c)(1), quoted in maj. opn., *ante*, at p. 52.)

In my view, triable issues exist whether Enterprise as the vehicle owner refused to admit coverage under its cash deposit. That denial, coupled with

the bankruptcy of the driver's insurer, invoked appellant's uninsured motorist coverage with Mercury and required Mercury to pay its insured's damages to the extent of its uninsured motorist coverage, in this case $30,000. If Mercury were to have the opportunity to try its subrogation action and prevailed at that trial it should be entitled to recover $15,000 from Enterprise and $7,500 from CIGA. In my view, it should be given an opportunity to do just that.

On April 24, 2000, the opinion was modified to read as printed above.