[No. C053355. Third Dist. July 31, 2007.]

CALIFORNIA CAPITAL INSURANCE COMPANY, Plaintiff and Respondent, v.
DOUGLAS E. NIELSEN, Defendant and Appellant.

COUNSEL

Cartwright, Fulton & Adams, David A. Fulton; and Susan D. Wallace for Defendant and Appellant.

Daniels, Fine, Israel, Schonbuch & Lebovits and Mark R. Israel for Plaintiff and Respondent.

OPINION

DAVIS, Acting P. J.—This declaratory relief action concerns uninsured motorist insurance coverage. We conclude that when the owner and the operator of an otherwise uninsured vehicle have liability insurance coverage for bodily injury damages through a personal liability umbrella policy, that vehicle is not an uninsured motor vehicle. Consequently, we affirm the judgment in favor of California Capital Insurance Company (CCIC) that

declared that CCIC did not have to pay uninsured motorist benefits to its injured insured, Douglas E. Nielsen.

## BACKGROUND

Eighteen-year-old Nielsen was a passenger in an Acura driven by Bryan Jones. Jones, who was inebriated and driving with a suspended license, lost control of the Acura and crashed into a pole. Nielsen was thrown from the car, rendering him a quadriplegic.

Prior to the accident, Jones's mother, Carla Brown, had bought the Acura and apparently lent it to him. At the time of the accident, the Acura was not covered by any auto liability insurance policy.

Brown, however, at the time of the accident, had a $1 million personal liability umbrella policy with State Farm. State Farm provided coverage for both Jones and Brown under this policy, and paid Nielsen $1 million in a good faith settlement of Nielsen's action against them.

Nielsen made a claim against his father's CCIC auto liability policy for its per person limits of $100,000 in uninsured motorist benefits. This policy provided coverage to family members.

CCIC declined to provide uninsured motorist benefits to Nielsen, concluding that the Acura was not an uninsured motor vehicle in light of the State Farm personal liability umbrella policy. CCIC successfully pursued this stance in a declaratory relief action against Nielsen, which is the subject of the appeal here.

## DISCUSSION

The issue is whether a personal liability umbrella policy that provides bodily injury liability coverage to the owner and to the operator of an otherwise uninsured motor vehicle means that the vehicle is not uninsured, thereby precluding an injured person from obtaining uninsured motorist benefits under his or her own auto liability policy. We conclude that is the case.

This issue requires us to interpret, in the context of undisputed facts, the uninsured motorist provisions of the CCIC auto insurance policy (which conform to corresponding Ins. Code statutes). As such, this issue presents a question of law that we determine independently on appeal. (*State Farm Mut. Auto. Ins. Co. v. Messinger* (1991) 232 Cal.App.3d 508, 513 [283 Cal.Rptr. 493].)

In California, uninsured motorist coverage is governed by Insurance Code section 11580.2.[1]

Section 11580.2 specifies two points pertinent here:

(1) that "[n]o policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle . . . shall be issued . . . in this state . . . unless the policy contains . . . a provision . . . insuring the insured . . . for all sums within [required] limits that [the insured] . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle" (§ 11580.2, subd. (a)(1)); and

(2) that " 'uninsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident . . . ." (§ 11580.2, subd. (b).)

Conforming to these two statutory provisions, the uninsured motorist provision of the CCIC insurance policy here specified respectively:

(1) that CCIC would "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' " if "[t]he owner's or operator's liability . . . arise[s] out of the ownership, maintenance or use of the 'uninsured motor vehicle' "; and

(2) that " '[u]ninsured motor vehicle' means a . . . motor vehicle . . . [t]o which no bodily injury liability bond or policy applies at the time of the accident . . . ."

In line with these conforming statutory and contractual provisions, CCIC would owe Nielsen uninsured motorist benefits in the following situation: if the owner of the Acura (Carla Brown) and the operator of the Acura (Bryan Jones) were liable for Nielsen's bodily injuries because of their ownership, maintenance or use of the Acura, and they did not have any applicable bodily injury liability insurance policy to cover these liabilities. (See *United Pacific-Reliance Ins. Companies v. Kelly* (1983) 140 Cal.App.3d 72, 75 [189 Cal.Rptr. 323] (*United Pacific-Reliance*) [the uninsured motorist provision's "entire focus is on the liability of the *owner* or *operator* for ownership, maintenance or use of a vehicle"].)

 As we have seen, this is not the situation here. Here, both the owner (Brown) and the operator (Jones) of the Acura had liability coverage for

---

[1] Hereafter, undesignated section references are to the Insurance Code.

Nielsen's bodily injuries pursuant to Brown's personal liability umbrella policy with State Farm. Consequently, Nielsen was not "legally entitled" to recover bodily injury damages from "the owner or operator of an uninsured motor vehicle" (§ 11580.2, subd. (a)(1)) because the Acura was not an "uninsured motor vehicle"—i.e., "a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident" (§ 11580.2, subd. (b)). As a result, the uninsured motorist provision of Nielsen's CCIC auto insurance policy did not apply.[2]

■ We conclude that when an owner and an operator of an otherwise uninsured motor vehicle have bodily injury liability insurance coverage under a personal liability umbrella policy that covers the ownership and use of that vehicle in the accident at issue, that vehicle cannot be considered an uninsured motor vehicle triggering payment under the injured person's uninsured motorist provision.

Nielsen challenges our conclusion on four grounds. We discuss and reject each of these in turn.

First, Nielsen relies on a comment from *Mercury Ins. Co. v. Enterprise Rent-A-Car Co.* (2000) 80 Cal.App.4th 41 [95 Cal.Rptr.2d 222] (*Mercury*), that uninsured motorist coverage " 'status depends on the insured status of the vehicle, not the *driver.*' " (*Id.* at p. 48; see also Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) ¶ 6:2182, p. 6G-25 (Croskey treatise).) Based on this comment, Nielsen argues that since the Acura was not covered by any auto liability insurance policy at the time of the accident and was not specifically identified in Brown's State Farm personal liability umbrella policy, the Acura was an uninsured motor vehicle. We disagree.

The problem with Nielsen's argument is that he has pulled the *Mercury* comment out of its orbit. In *Mercury*, the injured person was a passenger in a rental car in which the driver had no available insurance. (*Mercury, supra*, 80 Cal.App.4th at pp. 44–45.) The *Mercury* court quoted and agreed with the Croskey treatise language that uninsured motorist coverage status depends on the insured status of the vehicle, not the driver. (*Mercury*, at p. 48.) The court

---

[2] As noted, section 11580.2, subdivision (a)(1), provides for uninsured motorist benefits if the insured is legally entitled to recover bodily injury (or wrongful death) damages from "the owner or operator of an uninsured motor vehicle." As one commentator has remarked, "[t]he language of the statute is in the disjunctive and, consequently, if either the owner or the operator is not insured it may be argued that the vehicle is uninsured." (1 Clifford, Cal. Uninsured Motorist Law (6th ed. 2006) § 6.40, com., p. 6-13 (Clifford).) We need not consider this issue because here *both* the owner and the operator were insured.

then concluded that the rental car could not be considered an uninsured motor vehicle that triggered uninsured motorist benefits for the injured passenger because the rental car company had bodily injury liability insurance on the car. (*Id.* at pp. 46, 48.) The issue in *Mercury* and in the Croskey treatise, then, concerns the effect on uninsured motorist coverage of an uninsured driver driving an insured car. As *Mercury* and the Croskey treatise explain, " 'a vehicle that is insured cannot be regarded as "uninsured" when driven by an uninsured person.' " (*Mercury*, at p. 48; see also Croskey treatise, *supra*, ¶ 6:2182 et seq., p. 6G-25; *id.*, ¶ 6:2185 [discussing an exception to this rule not pertinent here]; fn. 2, *ante.*)

In the parlance we have been using and that of the uninsured motorist statute, section 11580.2, *Mercury* involved a vehicle which had an uninsured operator but an insured owner. In this context, *Mercury* concluded that the vehicle was not uninsured and therefore would not trigger uninsured motorist benefits. In this way, *Mercury* actually levels another blow to Nielsen's position because here we have an insured owner (Brown) *and* an insured operator (Jones). A fortiori, under *Mercury*'s reasoning, the Acura was not an "uninsured motor vehicle" that triggered uninsured motorist benefits for Nielsen. (But see fn. 2, *ante*; see also *Mercury, supra*, 80 Cal.App.4th at pp. 47–48, and its comparison of the Clifford and Croskey treatises.)

Second, Nielsen argues that the "Legislature could have described an uninsured motor vehicle as one in which neither the driver nor the car have liability insurance at the time of the accident. It has not done so. [Nielsen] is entitled to uninsured motorist benefits because the Acura was not a covered vehicle on any insurance policy." Nielsen explains that Brown's personal liability umbrella policy with State Farm "did not insure the . . . Acura . . . ; rather, it provided secondary, personal liability insurance for her and members of her family." We disagree with this argument.

The Legislature has not only described, but defined, an uninsured motor vehicle, as relevant here, as a vehicle "with respect to the ownership, maintenance or use of which there is *no bodily injury liability insurance* or bond *applicable* at the time of the accident." (§ 11580.2, subd. (b), italics added.) And the Legislature has specified that an injured person is owed uninsured motorist benefits under his own auto policy if he is "legally entitled to recover as damages for bodily injury or wrongful death from the *owner or operator of an uninsured motor vehicle*." (§ 11580.2, subd. (a)(1), italics added.) As pertinent here, then, the Legislature's focus with respect to uninsured motorist coverage, and that of the conforming CCIC uninsured motorist provision, is on whether the owner or operator of a vehicle has no bodily injury liability insurance covering his or her ownership, maintenance or use of the vehicle at the time of the accident. (*United Pacific-Reliance,*

*supra*, 140 Cal.App.3d. at p. 75.) Contrary to Nielsen's assertion, there is no ambiguity regarding section 11580.2 or the CCIC policy here. Here, Brown's State Farm personal liability umbrella policy provided bodily injury liability insurance at the time of the accident to the owner and to the operator of the Acura. Consequently, the Acura was not an "uninsured motor vehicle" and Nielsen's uninsured motorist provision with CCIC did not apply.

Third, in a related vein, Nielsen maintains that if Brown's State Farm personal liability umbrella policy "insured the Acura . . . as a 'policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle' [quoting section 11580.2, subdivision (a)(1)], then it would have been required[, under that statute,] to provide uninsured motorist coverage for bodily injury." Nielsen notes that Brown's umbrella policy does not provide uninsured motorist coverage. Nielsen's contention is based on section 11580.2, subdivision (a)(1)'s general requirement that "[n]o policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle" shall be issued in California unless it provides uninsured motorist coverage.

However, the Legislature has scuttled this argument by *excepting* from this general requirement to provide uninsured motorist coverage personal liability policies that incidentally provide automobile liability coverage. Section 11580.2, subdivision (a)(1), also states that "[n]othing in this section shall require that uninsured motorist coverage be offered or provided in any homeowner policy, *personal* and residents' *liability policy, comprehensive personal liability policy*, manufacturers' and contractors' policy, premises liability policy, special multiperil policy, or any other policy or endorsement where automobile liability coverage is offered as incidental to some other basic coverage . . . ." (Italics added.) In fact, this exception is a legislative recognition that personal liability umbrella policies may provide, as Brown's State Farm policy does here, bodily injury liability insurance in the automotive liability context.

Moreover, this legislative listing of such an array of various liability insurance policies defeats Nielsen's related assertion that the phrase "no bodily injury liability insurance" in the uninsured motorist statutory scheme refers to *automobile*, not *personal*, bodily injury liability insurance. As this lengthy list demonstrates, the Legislature is well versed on the different kinds of liability insurance policies and knows how to refer to them specifically. The Legislature's general reference in section 11580.2 to "no [applicable] bodily injury liability insurance"—in defining an uninsured motor vehicle—is

not a reference limited to *auto* liability policies. (§ 11580.2, subd. (b).) Had that been the case, the Legislature's precise diction in this realm would have been on display.

As *Mercury* and the Croskey treatise also emphasize, an " 'uninsured motor vehicle' " includes a vehicle " 'for which *no* bodily injury liability insurance is available.' " (*Mercury, supra,* 80 Cal.App.4th at p. 47; see also Croskey treatise, *supra,* ¶ 6:2168, p. 6G-21.)

Fourth and finally, Nielsen notes that the fundamental purpose of section 11580.2, in governing uninsured and underinsured motorist coverage, is to provide the insured with the same insurance protection he would have enjoyed had the tortfeasor carried liability limits equal to the insured's uninsured or underinsured motorist limits. (See *Viking Ins. Co. v. State Farm Mut. Auto. Ins. Co.* (1993) 17 Cal.App.4th 540, 547–548 [21 Cal.Rptr.2d 590].) From this, Nielsen argues that if Jones had carried $100,000 of auto liability insurance (i.e., the amount of Nielsen's uninsured motorist per-person limits under his CCIC policy), then Nielsen "would have received $100,000 under Jones'[s] auto liability policy *plus* one million dollars under Carla Brown's umbrella policy. Since Jones's Acura . . . was uninsured, Nielsen is out $100,000 by reason of the trial court's ruling. Nielsen's [uninsured motorist coverage, the argument goes,] has not 'filled the vacuum' due to the uninsured status of the Acura . . . ." Nielsen is mistaken.

If Jones had carried $100,000 of auto liability insurance, that amount would have been paid to Nielsen, and Brown's $1 million personal liability umbrella policy, under which Jones was insured, would have paid Nielsen an additional $900,000. This is because the personal liability coverage under that umbrella policy provides: "If you are legally obligated to pay damages for a loss, we will pay [up to the $1 million coverage limits] your net loss [defined in the policy, as pertinent, as 'the amount you are legally obligated to pay as damages for personal injury'] minus the retained limit [defined in the policy, as pertinent, as 'the total limits of liability of your *underlying* insurance']." (Italics added.) Accordingly, Nielsen received the same amount from Jones-Brown ($1 million) as he would have received had Jones carried $100,000 in auto liability coverage and $1 million in personal liability umbrella coverage, and this is consistent with the fundamental purpose of section 11580.2.

We conclude that CCIC does not have to pay uninsured motorist insurance benefits to Nielsen here.

## DISPOSITION

The judgment is affirmed. CCIC is awarded its costs on appeal. (Cal. Rules of Court, rule 8.276(a).)

Nicholson, J., and Butz, J., concurred.

A petition for a rehearing was denied August 21, 2007.