[No. B026166. Second Dist., Div. One. Oct. 30, 1987.]

PAMELA A. DENNY, Plaintiff and Appellant, v.
ST. PAUL GUARDIAN INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Ronald S. Smith for Plaintiff and Appellant.

Spray, Gould & Bowers and Robert D. Brugge for Defendants and Respondents.

**OPINION**

**HANSON (Thaxton), J.**—Petition to compel arbitration. Petitioner Pamela A. Denny sought arbitration of a controversy concerning the coverage provided by the uninsured motorist portion of her automobile insurance policy. Named as defendants were St. Paul Guardian Insurance Co., the St.

Paul Property and Liability Insurance Co., and St. Paul Fire and Marine Insurance Co. (hereinafter St. Paul).

The trial court denied the petition on the ground that the vehicle petitioner was driving at the time she sustained serious personal injuries was not an uninsured motor vehicle within the meaning of her policy or Insurance Code section 11580.2. Petitioner filed a timely appeal from the trial court's order pursuant to Code of Civil Procedure section 1294, subdivision (a).

FACTS

The facts are not in dispute between the parties. Sometime prior to March 5, 1986, petitioner obtained an automobile insurance policy issued by St Paul; the policy number was PAO 610 7602; petitioner was the named insured and her vehicle was described as a 1978 Datsun 280Z.

By attached endorsement, the policy contained an exclusion entitled "Liability Coverage Exclusion Endorsement," which provided that there was no liability coverage for bodily injury to either petitioner or any family member. The coverage which was extended to others in relation to petitioner's vehicle also applied to substitute vehicles in use by petitioner.

Included also was uninsured motorist coverage of $100,000. With respect to that coverage, the policy declared that bodily injury damages could be recovered from the insurer when a covered person, such as petitioner, would legally be entitled to recover such from the owner or operator of an "uninsured motor vehicle. . . ." The policy further defined an "uninsured motor vehicle" as excluding a vehicle owned by or furnished or available for the regular use of the petitioner or any family member.

The policy provided for arbitration of disputes over coverage.

On February 14, 1986, petitioner's Datsun was stolen. She contacted St. Paul and was assisted in obtaining a temporary replacement vehicle from Jiffy Rent-a-Car, a 1985 Mercury. The adjuster for St. Paul advised her that she need not purchase any additional insurance for the rental car since it was a substitute vehicle within the language of her policy and would be insured just as the Datsun was.

On March 6, 1986, petitioner was sitting in the driver's seat of the Mercury with her seat belt on and the engine off, waiting for a friend to return from a nearby bank machine. She was parked parallel to the curb between two other vehicles.

Suddenly a man unknown to petitioner entered the Mercury without her consent and hit her several times about the face. Then he started up the engine, while attempting to push her out of the car. The assailant and would-be thief drove the Mercury forward, striking the car parked in front of it as he attempted to maneuver the Mercury out of the parking space. He struck the car in front several times, while continuing to attempt to force petitioner out of the Mercury.

Petitioner was struck by the Mercury car door as she was hanging half in and half out of the car, still in her seat belt. She also hit her left knee against the dashboard during this melee, and sustained other injuries. Petitioner finally fell out of the car; her screams attracted others to the scene and the unknown man got out of the car and ran away. The police came and took a report of the incident.

Petitioner was hospitalized at Midway Hospital from March 7, 1986, to March 19, 1986. She was then transferred to St. John's Hospital where she remained until April 19, 1986. Petitioner sustained a concussion and the damage to her left knee required corrective surgery. The hospital bills she has incurred are approximately $25,000 and the doctors' bills are approximately $15,000.

St. Paul denied coverage and the petition to compel arbitration followed.

## STANDARD OF REVIEW

In disposing of the petition, the trial court's function was to determine, prior to arbitration, whether the parties had a duty, pursuant to the insurance contract, to arbitrate the dispute. (Code Civ. Proc., § 1281.2; *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 [121 Cal.Rptr. 477, 535 P.2d 341].) The trial court performed that function by interpreting the language of the contract and the language of the applicable statute, Insurance Code section 11580.2. ■ The interpretation of writings, including statutes, ordinarily presents questions of law.

Where extrinsic evidence has been introduced in the trial court to assist the court in determining the meaning of the writings in question, any reasonable construction of the writings by the lower court will be upheld on appeal. However, where—as in the present case—no extrinsic evidence has been introduced in the trial court, this court conducts independent review *of the writings* and is not bound by the trial court's interpretation. We conduct independent review here. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 292 et seq., pp. 303-306.)

CONTENTION OF PETITIONER

■ Petitioner contends on this appeal that the unusual circumstances surrounding her injuries rendered the 1985 Mercury automobile a vehicle within the control of an uninsured motorist, the thief, and thus the uninsured motorist provisions of her policy with St. Paul should require the payment of the benefits by St. Paul.

DISCUSSION

We note at the outset that the liability exclusion in petitioner's insurance policy, precluding payment by the insurer for bodily injury of the named insured and members of the household, has been upheld in the face of constitutional challenge. (*Farmers Ins. Exchange* v. *Cocking* (1981) 29 Cal.3d 383, 387 [173 Cal.Rptr. 846, 628 P.2d 1].)

Thus, unless petitioner could establish her entitlement to benefits payable pursuant to her uninsured motorist coverage, there was no coverage included in this policy of insurance for petitioner's injuries.

Insurance Code section 11580.2 provides, in pertinent part, that "(a)(1) No policy of bodily injury liability insurance covering liability out of the ownership, maintenance, or use of any motor vehicle . . . *shall* be issued . . . unless the policy contains . . . a provision . . . insuring the insured . . . for all sums within such limits which he . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the *owner* or *operator* of an uninsured motor vehicle." (Italics added.)

■ This section, as an expression of public policy, mandates the inclusion of uninsured motorist coverage in every policy of automobile insurance issued in this state, with certain specified exceptions. The objective of the statute is to provide protection to the insured from the injuries caused by the unsafe operation of uninsured motor vehicles. (*Farmers Ins. Exchange* v. *Hansel* (1970) 12 Cal.App.3d 570, 573 [90 Cal.Rptr. 654].)

■ Respondent St. Paul contends that uninsured motorist coverage is not dependent upon the uninsured state of the *driver* of a vehicle, but upon the uninsured state of the *vehicle,* when compensation for injuries sustained is sought pursuant to this statute and the provisions of a particular policy.

Petitioner's vehicle, a substitute for her regular vehicle, was covered by her policy of insurance but simply subject to an exclusion which precluded payment by the insurer for bodily injury sustained by her. We do not believe

that this exclusion contained in the policy rendered petitioner's vehicle an uninsured vehicle.

It seems clear that the Legislature did not intend for such a "covered" vehicle to qualify as an "uninsured motor vehicle" for the purpose of recovering uninsured motorist benefits.

Insurance Code section 11580.2, subdivision (a)(2) permits the exclusion from uninsured motorist coverage uninsured vehicles owned or operated by the insured or a resident of the same household. Subdivision (b) specifically states that the term "uninsured motor vehicle" shall not "include a motor vehicle owned or operated by the named insured or any resident of the household. . . ." In addition, subdivision (c) provides that the uninsured motorist coverage provided by the statute does not apply "(7) to bodily injury of the insured when struck by a vehicle owned by an insured."

Despite the unusual facts related in this petition, the case at bench is actually similar to that of *California Cas. Indem. Exch.* v. *Hoskin* (1978) 82 Cal.App.3d 789 [147 Cal.Rptr. 348], wherein the insured was injured when her son negligently operated the covered vehicle. An exclusion applied to those injuries, and the insured argued, as petitioner does here, that for the purpose of qualifying for uninsured motorist benefits, the covered vehicle was actually *not* an insured vehicle. The argument was rejected by the Court of Appeal, which declared that "[t]o construe section 11580.2 and appellant's policy to apply whenever a general policy is inapplicable to the specific claim created by an accident would appear to be reading something into the statute and policy which would not otherwise be there." (*Id.,* at p. 797.)

As unfortunate as the incident resulting in petitioner's injuries was, we have concluded that the trial court correctly denied her petition to compel arbitration.

### DISPOSITION

The judgment (order) is affirmed.

Spencer, P. J., and Devich, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 21, 1988.