**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DENNIS DREITH, in his capacity as
Administrator, Film Musicians
Secondary Market Fund; THE FILM
MUSICIANS SECONDARY MARKETS
FUND,
                    *Plaintiffs-Appellees,*

                    v.

NU IMAGE, INC., a California
corporation; MILLENNIUM FILMS,
INC., a Delaware corporation;
BREAKSTREET PRODUCTIONS, INC., a
California Corporation; DOG
WATCH PRODUCTIONS, INC., a
California Corporation,
                    *Defendants-Appellants,*

                    and

PHOENICIAN FILMS, INC., a
California corporation; KOW KNUT
PRODUCTIONS, INC., a California
corporation; SAD INCORPORATED, a
New York Corporation; LUNAR
COP PRODUCTIONS, an entity of
unknown incorporation; TSE TSE FLY

No. 10-55172

D.C. No.
2:05-cv-04146-
SVW-MAN

OPINION

PRODUCTIONS, a California Limited
Liability Company; FLY
PRODUCTIONS, INC., a California
Corporation; BIG TRUCK
PRODUCTIONS, INC., a California
Corporation; CHASE THE MOON,
INC., a California Corporation;
SCARRED PRODUCTIONS, INC., a New
York corporation,
                              *Defendants.*

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
June 9, 2011—Pasadena, California

Filed July 19, 2011

Before: Robert R. Beezer, Stephen S. Trott, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Trott

---

**COUNSEL**

Elizabeth Chilton and Patricia Glaser, Glaser, Weil, Fink, Jacobs, Howard & Shapiro LLP, Los Angeles, California, for the appellants.

Barbara Ravitz, Greines, Martin, Stein & Richland LLP, Los Angeles, California, for the appellee.

---

**OPINION**

TROTT, Circuit Judge:

The Defendants below, Appellants here, engaged in discovery misconduct that was sufficiently egregious to cause the district court to enter an order of default against them. Although they now contend for a variety of reasons that the default order was erroneous, the Defendants did not challenge the order of default by way of Federal Rule of Civil Procedure 55(c) or 60(b). Six months later, at the Plaintiffs' request, the district court entered default judgment against them with respect only to liability, but deferred ruling on damages pending further briefing and evidentiary submissions. In their

papers opposing this request, the Defendants chose not to attack the default order, opting instead to argue that a default judgment was not appropriate. They asserted that "the court should exercise its discretion to deny Plaintiff's application for default judgment."

In ruling against them, the district court revisited the propriety of the order of default and concluded, in light of *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987), that the order was appropriate. The district court also issued a precisely detailed disclosure order to the Defendants requiring them to produce information the court needed to calculate damages. When they appeared to fail to comply with this disclosure order, the district court assigned the matter to a magistrate judge to determine if in fact the disclosure order had gone unheeded.

The magistrate judge held that the Defendants indeed had not complied. When the district court finally had all the information it needed, it conducted a full, contested, and comprehensive hearing on damages and entered judgment on behalf of the Plaintiffs in the amount of $1.1 million. During this process, the district court commented that "Defendants are trying to evade the requirements of the [Collective Bargaining Agreement] which, of course, is consistent with Defendants' general approach to this litigation."

The Defendants timely appeal, challenging only the legal validity of the district court's original order of default, but not the ensuing default judgment on liability itself or the denial of their motion for summary judgment on that issue. Nor do they challenge the district court's careful and thorough decision with respect to damages. We affirm.

I

According to the unchallenged declaration of James R. Cope, the effective beneficiaries of this action are musicians

who have banded together in an entity known as the Film Musicians Secondary Markets Fund ("Musicians Fund" or "Fund"). These musicians are contractually entitled to deferred wages derived from revenues earned in the secondary market of the films they helped create. These monies, known as residuals, come from the distribution of films after the films have been initially released.

The Musicians Fund is the creation of master collective bargaining agreements between the motion picture industry and the American Federation of Musicians of the United States and Canada. Distilled to its essence, this agreement ("CBA") requires motion picture companies to keep records on subsequent releases of films and to report on and pass to the Musicians Fund all monies owed to it, a sum which is calculated according to a fixed formula in the CBA. The Musicians Fund in turn distributes these residuals to the musicians to whom they are owing.

The various producers and secondary market distributors of these films are typically covered, as illustrated by this case, by Assumption Agreements, which make the films subject to the CBA. Signatories agree expressly for the benefit of the Musicians Fund to make the payments required, and "that the [Musicians Fund] shall be entitled to seek injunctive relief and damages." Moreover, a signatory "agrees to keep or have access to complete books and records showing the income . . . and the Administrator of the [Musicians Fund] shall have the right at all reasonable times to examine and inspect such books and records."

The films in this case are subject to those rules regarding inspection, as set forth in the relevant Assumption Agreements and other documents. Needless to point out, this arrangement puts the Musicians Fund and the musicians at the mercy of the film companies' (collectively, the "Companies") willing compliance with their obligations under the CBA, obligations which the Companies appear to have ignored.

II

The Musicians Fund started informally to attempt to enforce its rights under the CBA in 1998, writing to the companies seeking information and payment. Then, the problems began, as evidenced by Nu Image's lawyer's irrelevant claims that it was "not a signatory to the CBA," a denial which ignored the Assumption Agreements. Eventually, the Musicians Fund attorney wrote to Nu Image in 2004 stating the following:

> I understand that subsequent to my letter of last year to you, Nu Image, et al. and Mr. Cope have had discussions concerning the films and that Nu Image, et al. have expressed a wish to work with the Fund to research and resolve the matter. I further understand that there have been delays caused by the difficulty in researching some of the matters and by a personal tragedy. The Fund has, of course, accommodated these delays, but must now ask that the matter be brought to an overdue conclusion.

> By Monday, July 12, 2004, please therefore call or write either Mr. Cope . . . or me, to resolve this matter promptly without the necessity of a lawsuit. *Otherwise, the Fund will file an action in the United States District Court seeking full payment, interest, liquidated damages and cost of enforcement (including the Fund's attorneys' fees).*

> We previously forwarded a courtesy copy of a form of draft Complaint. In light of Nu Image's previous indication that it would resolve the matter, the Fund has not yet filed a lawsuit. Based on recent information, we will file an expanded action. We hope to avoid litigation, but will pursue the matter through judgment and collection if you do not take this final opportunity. Please call with any comments

or question, or if we may provide further informa-
tion.

(emphasis added). Nu Image did not respond. Counsel wrote
again on April 27, 2005, saying delay would no longer be
accommodated. No response. Accordingly, the Musicians
Fund was forced to resort to legal action and to file this law-
suit.

## III

On June 8, 2005, Dennis Dreith sued several of the offend-
ing movie production companies in his capacity as adminis-
trator of the Musicians Fund. The suit alleged at its core that
the Companies had failed to pay owed residuals to musicians
who performed film soundtracks, in violation of the CBA.
The district court issued a case notice admonishing counsel,
inter alia, that non-compliance with the local rules and Fed-
eral Rules of Civil Procedure "MAY LEAD TO THE IMPO-
SITION OF SANCTIONS WHICH MAY INCLUDE THE
STRIKING OF PLEADINGS AND ENTRY OF JUDG-
MENT OR DISMISSAL OF THE ACTION." This notice
ordered the parties — as contemplated by Federal Rule of
Civil Procedure 26(a)(1) — to schedule an initial meeting and
file a joint report thereon. The Companies immediately
responded to the order not with compliance, but with motions
to dismiss and for a more definite statement. The Companies
refused to meet or file the requisite joint report, arguing that
they were excused from so doing because they had filed
motions to dismiss and for a more definite statement. Thus,
the "proposed discovery plan" which they were required in
good faith to attempt to develop pursuant to Rule 26 could not
be accomplished, and no joint report could be filed.

Two of the Companies, "Dog Watch" and "Breakstreet,"
failed to appear, precipitating the entry of default against
them. Those defaults were vacated by joint stipulation subse-
quent to their appearance on October 7, 2005. The district

court then denied the Companies' motions to dismiss and for a more definite statement. In January 2006, the parties, citing settlement negotiations, agreed to continue the pretrial conference and trial date by three weeks. The Fund alleges that the Companies agreed to furnish discovery by March 24, 2006.

On March 24, 2006, still having provided no formal discovery, the Companies, disclaiming liability, moved for summary judgment. The Fund opposed summary judgment based on its allegation that the Companies had (1) failed to provide any documents, (2) failed to provide any responses to written interrogatories or requests for admission and production, and (3) in two cases had failed to make any disclosures under Federal Rule of Civil Procedure 26. The Companies responded that the motions could not be denied for any alleged failure to provide discovery, and that numerous documents had been produced informally during settlement negotiations.

On April 7, 2006, the Companies moved, ex parte, to postpone pretrial production, due on April 10, until after their summary judgment motions were heard. The ex parte motion was denied on April 10, 2006. In its order, the district court directed the Defendants to "return to Plaintiff an electronic copy of the Joint Stipulation re Discovery, with signature" and shortened the time in which it would hear the Fund's forthcoming discovery motion. Also on April 10, the Fund filed a motion in limine seeking exclusion of the Companies' evidence based on lack of disclosure. The Companies opposed the motion, arguing that the requested discovery had been provided during settlement negotiations, and that pending discovery, not including initial disclosures, had been stayed. They did not comply with the order regarding the Joint Stipulation re Discovery.

On April 14, 2006, the Fund moved to compel discovery, seeking depositions, responses to its interrogatories, requests for admission, and production. The parties filed a joint status stipulation outlining the basis of the Companies' dispute with

the Fund's motion to compel, as required by the local rules. The Companies stated that if their summary judgment motions were denied they would provide supplemental responses by April 21, 2006. The Companies alleged, however, that they were unable to comply with the court's pretrial production deadline of April 10, the extension of which was unsuccessfully sought in the ex parte motion of April 7, because "Defendants' counsel was preoccupied with drafting the lengthy summary judgment papers, filing pre-trial disclosures, filing a motion in limine, noticing Plaintiff's expert depositions, and providing Defendants' portion for this Joint Stipulation."

The district court denied the Companies' motions for summary judgment at a hearing on April 17, 2006. The next day, April 18, the district court adopted the Fund's proposed order denying the Companies' summary judgment motions and ordering the Companies to provide initial disclosures, respond to written discovery, and schedule depositions. The order stated:

> None of the defendants produced any documents as part of the initial disclosures. [Two of the Companies] provided no initial disclosure in any form. None of the defendants have provided any answers, as opposed to objections, to written discovery. *Defendants are ORDERED within five (5) days of the date of this Order [April 23, 2006] to provide documents in connection with the initial disclosure, and provide responsive answers to the written discovery.*

(emphasis added).

The Companies did not comply with this order either. The Fund had received no additional discovery from the Companies when it filed its requisite final pretrial order on April 24, 2006. The pretrial order was to be filed jointly, but the Com-

panies, after exchanging drafts with the Fund, decided to file an independent pretrial order on April 25.

The Fund received supplemental discovery from the Companies on April 25, 2006. The Fund alleged that the Companies partially answered only four of the twenty-four propounded interrogatories, objecting entirely to the rest. The Fund further alleged that the four responses were undecipherable, as it was unclear to which specific Company a given response applied.

The May 1, 2006, pretrial conference was short. Scheduled to be heard were both parties' motions in limine and the Fund's motion to compel. The district court asked the Companies' counsel why the Companies had not produced discovery related to the summary judgment motions. Counsel replied that the documents previously could not be located, but had subsequently been found in storage. The district court characterized the objections to twenty of the twenty-four interrogatories as "silly . . . absolutely silly objections." The district court continued: "I told you guys not to do what you are doing. I told you to start trying this case and not play games, and you didn't do it." The district court then entered default against the Companies. The district court's May 1, 2006 minute order stated:

> The Court finds that defendants have deliberately and willfully carried out discovery abuse and attempted to stall and block the progress of this action, and deliberately and willfully disobeyed the orders of this Court in so doing. The Court sanctions defendants and ORDERS the answers of the defendants hereby STRICKEN and the DEFAULT of each of the previously answering defendants is now ENTERED . . .

> Plaintiff's motion for order compelling responses to interrogatories, admissions and requests for produc-

tion is GRANTED. The defendants are ORDERED to produce all the documents requested of them by the plaintiffs forthwith.

The motions in limine and pretrial conference were stricken. The Companies were directed, in connection with damages, to produce "all records and books within their custody . . . showing or evidencing receipt of money or other consideration by defendants from or in connection with the movies within five (5) days of this Order." The Companies' default was entered on May 5, 2006.

On May 26, 2006, the Fund moved for an order, effectively a motion to compel, regarding the Companies' failure to produce necessary documents identified in the orders of May 1 and 3, and to compel disclosure in compliance therewith. In response to this motion, and well after the court's deadline, the Companies produced some documents and stated that they did not have any additional documents sought by the Fund. The district court granted the Fund's motion to compel on June 19, 2006, stating "I've had enough now. The next time you come to this court somebody is going to jail. Now get those documents. Get them before June 23rd."

Notwithstanding their earlier protestations on May 26, 2006, that they did not have any additional documents, the Companies discovered 1,500 pages of discovery on June 23, 2006. On June 29, 2006, the district court entered a written order captioned "Order re: Defaulted Defendants' Continuing Breaches of the Court's Orders," stating that the Companies "have deliberately and willfully disobeyed the Court's Orders of May 1, 2006, and May 3, 2006." The district court ordered the Companies to produce "forthwith" the specified discovery, indicating that it would assist the court in, among other things, a "calculation of the amount of residuals owed to the Fund . . ."

The Companies substituted counsel on July 24, 2006, causing Judge Real to recuse himself due to a relationship with

one of the Companies' new attorneys. The case was reassigned to Judge Stephen Wilson.

The Fund moved for default judgment on October 23, 2006. Adhering to the rule that default does not entitle the non-defaulting party to a default judgment as a matter of right, Judge Wilson considered the issues and the Companies' arguments and granted the Fund's motion as to liability in an order dated March 1, 2007. As previously indicated, his order revisited Judge Real's entry of default and concluded that it was well-taken. Judge Wilson methodically went through the five *Malone* factors (more on this later) and determined that the Companies' egregious behavior deserved default. However, because he was "unsatisfied" with the parties' competing declarations on damages, Judge Wilson ordered the Companies, no later than March 19, 2007, to produce "all of the information upon which their underlying calculations are based" for the purposes of assessing damages. The district court also scheduled a status conference for March 26, 2007 for the main purpose of ensuring that the Companies' disclosure of information was complete.

At the status conference on March 26, 2007, no one appeared for the Companies because of a calendaring error by the Companies' trial counsel.

Due to the Companies' apparent recalcitrance to provide the requested discovery, Judge Wilson referred the matter to Magistrate Judge Nagle, asking her to examine the Companies' compliance with the March 1 order. On June 4, 2007 Judge Nagle granted the Fund's motion to compel, (1) finding that the Companies failed to comply with Judge Wilson's March 1 order, and (2) ordering production of the missing material.

The district court held a formal damages hearing on March 3, 2008. The Fund's disputed motion for damages was granted on December 3, 2009, in a thorough, twenty-seven

page order. The amount of damages was $1.1 million. Final judgment was entered on January 8, 2010.

On appeal, the Companies raise only two issues: (1) whether Judge Real lacked the power to impose default as a sanction for discovery misconduct, and (2) assuming such power, whether Judge Real abused his discretion by imposing default rather than lesser sanctions. At oral argument, they disclaimed any interest in other matters, telling us that "the issue here is Judge Real's entry of default."

## IV

In reviewing a district court's imposition of a sanction, we first engage in de novo review of whether the judge had the power to impose the sanction. *S.M. v. J.K.*, 262 F.3d 914, 917 (9th Cir. 2001), as *amended by* 315 F.3d 1058 (9th Cir. 2003). "We review for an abuse of discretion the district court's decision to enter a default judgment. That standard of review necessarily encompasses the entry of default, because entry of default alone does not constitute an appealable final order." *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 886 (9th Cir. 2001) (internal quotations and citations omitted).

## V

## A

**[1]** The district court possessed the power to impose default as a sanction for the Companies' discovery misconduct. Under Federal Rule of Civil Procedure 37(b), a district court may impose sanctions, including default, for failing to comply with a court order. Rule 37(b) reads in relevant part as follows:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending

may issue further just orders. They may include . . . dismissing the action or proceeding in whole or in part; [and] rendering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A)(v)-(vi).

**[2]** The Companies put forth two arguments regarding the district court's alleged lack of power to impose the sanction of default: (1) the default did not result from any noticed motion by the Fund, and (2) the court's discovery order of April 18 was invalid, and thus could not serve as a basis for sanctions, because it was issued prior to a noticed motion to compel.

**[3]** The Companies' first argument fails. Though Judge Real was decisive in the manner in which he imposed sanctions, the plain language of Rule 37(b) contains no requirement mandating a noticed motion or opportunity to be heard before sanctions — including default — may be imposed. "If a party . . . fails to obey an order . . . the court *may* issue further just orders." Fed. R. Civ. P. 37(b)(2)(A) (emphasis added).

**[4]** The Companies' second argument is equally unavailing. The Companies go to great lengths to argue that the April 18 order was invalid and thus could not serve as a basis for Rule 37(b) sanctions because it was issued before the Fund's motion to compel was heard. Rule 37(b) sanctions, however, may be issued if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)." "The definition of 'order' in Rule 37(b) has been read broadly." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). Sanctions may be imposed even for violation of a court's oral order, as long as a party has "unequivocal notice that a court has asked that certain documents be produced." *Id.* (citing *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974)). Though the April 18 order

was not noticed, opposed, and heard in a formal manner, it still constituted "an order to provide or permit discovery" with which compliance was mandatory, in the same way an oral order of a district court, though perhaps imposed quickly at the conclusion of a hearing, is nonetheless binding on the parties. As Rule 37(b) states, an order stemming from a noticed motion to compel is but one example of an order which may, upon violation thereof, result in sanctions.

**[5]** Furthermore, "Rule 16 of the Federal Rules of Civil Procedure authorizes a district court to enter a scheduling order that limits joinder of parties and amendment of the pleadings. Fed. R. Civ. P. 16(b)(1). Violations of a scheduling order may result in sanctions, including dismissal under Rule 37(b)(2)(C)." *Atchison, Topeka and Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1073 (9th Cir. 1998) (citing Fed. R. Civ. P. 16(f)). *See also In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("The goal [of Rule 16] is to get cases decided on the merits. . . . Subsection (f) puts teeth into these objectives by permitting the judge to make such orders as are just for a party's failure to obey a scheduling or pretrial order, including dismissal.").

**[6]** Judge Real stated that the imposed sanction was precipitated not only by the Companies' violation of the April 18 order, but also by their failure to adhere to scheduled dates for initial disclosures: "defendants Breakstreet and Dogwatch did not provide any initial disclosures whatsoever until plaintiff filed its motion *in limine*." The Companies also declined to meet and confer or prepare a joint stipulation, as the pretrial order required them to do. The pretrial order in this case undisputedly warned that failure to comply could result in sanctions including dismissal and entry of judgment. These failures to comply with orders of the court provided Judge Real with the power under Rule 37(b) to impose sanctions sua sponte, up to and including default.

Moreover, a district court has the inherent power to revisit its non-final orders, and that power is not lost when the case is assigned mid-stream to a second judge. Orders such as the default in this case are "subject to reconsideration and revision either by the same judge, a successor judge or a different judge to whom the case might be assigned." *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970). As the Companies state in their opening brief, almost half of Judge Wilson's twenty-five page opinion "was spent revisiting Judge Real's entry of the Companies' default." Judge Wilson stepped into Judge Real's shoes, and what he then did was manifestly appropriate in revisiting previous orders of the court. Effectively, Judge Wilson considered the matter as though he had been presented with a motion pursuant to Rule 55(c) to set aside the default.

### B

**[7]** Nor did Judge Wilson abuse his discretion by imposing the sanction of default. Although dismissal is a harsh penalty imposed only in extreme circumstances, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), we will overturn a dismissal sanction only if we have a "definite and firm conviction that it was clearly outside the acceptable range of sanctions," *Malone*, 833 F.2d at 130.

> We have identified five factors that a district court must consider before dismissing a case or declaring a default: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."

*Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (quoting *Malone*, 833 F.2d at 130). If the district court fails to make explicit findings regarding each of these factors,

we must review the record independently to determine whether the dismissal was an abuse of discretion. *Malone*, 833 F.2d at 130. "We may affirm a dismissal where at least four factors support dismissal, or where at least three factors strongly support dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (internal quotation and ellipsis omitted). In addition, in order to warrant a sanction of dismissal, the party's violations of the court's orders must be due to wilfulness or bad faith. *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

Though the entry of default was an undeniably harsh sanction, the record before us does not leave us with the "definite and firm conviction that it was clearly outside the acceptable range of sanctions." *Malone*, 833 F.2d at 130.

Judge Real did not make explicit his findings regarding the *Malone* dismissal factors before imposing default, but Judge Wilson did so within his authority after he assumed control of the district court litigation.

**[8]** Regarding the first three factors, Judge Wilson found that they "weightily" favored default. The Companies delayed resolution of the case, interfered with the court's management of its docket in one of the busiest districts in the country, and the actions of the Companies "made it impossible for Plaintiff to adequately prepare itself for trial."

The fourth factor, resolution of cases on their merits, always weighs against dismissal. *Adriana*, 913 F.2d at 1412.

**[9]** The fifth factor, imposition of lesser sanctions, is difficult, but Judge Wilson found that it weighed in favor of dismissal. As Judge Wilson observed, the court's April 18 order represented a first, lesser sanction than default; the Companies were ordered to produce documents and answer interrogatories. Furthermore, Judge Wilson found the actions of the Companies to be "egregious." Under "egregious circum-

stances . . . it is unnecessary (although still helpful) for a district court to discuss why alternatives to dismissal are infeasible." *Malone*, 833 F.2d 132. We agree with his analysis.

## VI

**[10]** The Companies describe the imposition of default alone as a "doomsday" sanction. We are left to wonder why such sophisticated litigants, represented by counsel, failed to avail themselves of the avenues for relief from default afforded them by Federal Rule of Civil Procedure 55(c) and 60(b),**[1]** particularly when a new judge was assigned to the matter. Notwithstanding this arguable appellate jurisdictional defect, we conclude both that the district court possessed the power to impose the sanction of default and that the district court did not abuse its discretion by so doing.

## VII

**[11]** Now, we come to the bottom line. At the end of the day the Companies conceded in the District Court, in connection with a fully litigated hearing on damages, that they owed at least $94,917.23 in unpaid "residuals owing for the ten subject films," plus $1,000 for "mathematical/clerical errors." Moreover, they proposed a "residuals calculation of $131,835" based upon "amounts recently collected." This concession followed the Companies' considered decision *not* to challenge the adverse order of default.

---

**[1]***Consorzio del Prosciutto di Parma v. Domain Name Clearing Co., LLC*, 346 F.3d 1193, 1195 (9th Cir. 2003), mandates dismissal of an appeal where a party has failed to avail itself of either Rule 55(c) or 60(b) in the district court. Though neither motion was made in this case, we consider the merits of this action, as both public policy and the policy of this court dictate. "A default judgment entered pursuant to Rule 37 is an appealable final order." *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1410 (9th Cir. 1990) (citing *United States v. Proctor & Gamble*, 356 U.S. 677, 679-80 (1958) and 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2006 (1970)).

**[12]** These concessions of liability notwithstanding, the Companies in their opening brief ask us to reverse and remand this case "so that it can be decided on its merits." To this request, our answer is that it *was* fully decided on its merits by Judge Wilson after a complete hearing and a thorough airing of every one of the parties' disagreements. The district court's twenty-seven page order granting Plaintiffs' application for default judgment as to damages dated December 3, 2008, which was based on a full evidentiary record and briefing plus input from both sides, addressed *all* the issues before it; and it did so in the context of the Companies' binding concession of liability on the subject films, albeit while disputing the amount. By that time, as counsel admitted during oral argument, all the discovery material was finally in the record.

The district court meticulously adjudicated on the merits every contested damages issue: residuals, liquidated damages, pre-judgment and post-judgment interest, the Musicians Fund's accounting expenses, and attorneys' fees. With respect to the amount of residuals, the district court addressed all sub-issues, i.e., supplemental market revenues, video cassette revenues, mixed licenses, and non-refunded deposits. We repeat, the result at this hearing and the merits adjudication of all damages disputes in the contest of the Companies' admissions of liability on all ten films convinces us that the Companies' basic prayer in their brief for a decision on the merits has been answered, and nothing remains to be done. We are hard pressed to understand how the Companies on remand could successfully disclaim liability without repudiating their concessions of liability during the damages trial. They admit that if we were to remand this case, it would return to Judge Wilson. Were we for some reason to do so, all we can foresee for the Companies is an increase in the Fund's damages caused by more attorneys' fees to which they would be entitled.

In addition, by choosing in the district court not to avail themselves of Rules 55(c) and 60(b), and electing in their papers filed with Judge Wilson not to "re-argue the propriety

of the default itself," the Companies can be charged with intentionally and tactically relinquishing known rights — which is normally called "waiver" — with respect to the order of default. Rarely do we entertain issues not raised or presented in the district court, and we see no reason to do so here. The Companies have rolled the dice in an attempt to freeze Judge Real's order of default in time, but their gamble has failed. Had Judge Wilson accepted their submissions and arguments on damages, we seriously doubt they would be here on appeal arguing about default.

## VIII

Even were we to conclude that Judge Real's actions were improper, which we do not, Judge Wilson's judicious handling of the case gave the Companies everything to which they were entitled, including their day in court on the issues that mattered, i.e., the kind and amount of damages and attorneys' fees for which they are liable. We note again that the Companies' opening brief does not challenge the district court's decisions regarding the calculation of damages, attorneys' fees, interest, the amount of money awarded in the judgment, or any other part of it. Nor do the Companies argue on appeal that they are not liable for the damages.

Federal Rule of Civil Procedure 61 wisely says that we must "disregard all errors and defects that do not affect any party's substantial rights." We have scoured and scrubbed every page of the record with particular emphasis on Judge Wilson's two orders, the first which granted default judgment on liability and the second awarding damages. We conclude when all is said and done that none of the actions of Judge Real of which the Companies complain had any adverse effect on those rights. *See United States v. 191.07 Acres of Land*, 482 F.3d 1132, 1137 (9th Cir. 2007) (harmless error where erroneous valuation methodology applied by district court resulted in higher compensation than that which was sought); *Obrey v. Johnson*, 400 F.3d 691, 699 (9th Cir. 2005)

("[I]n order to reverse, we must find that the error affected the substantial rights of the appellant.").

## CONCLUSION

The Federal Rules of Civil Procedure exist to move a case forward to disposition, and to do so promptly and expeditiously. As Judge Wilson correctly noted, discovery too often has become a desultory game of hide and seek. The Companies ignored their clear responsibilities under the CBA, and now they must pay the piper. "At some point, litigation must come to an end. That point has now been reached." *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2011).

AFFIRMED.