**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

OCT 17 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EMEKA NDIGWE, | No. 15-56813 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-06758-FMO-AS |
| v. | |
| ALLSTATE INDEMNITY COMPANY, ERRONEOUSLY SUED AS ALLSTATE INSURANCE COMPANY, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge

Argued and Submitted May 12, 2017
Submission Vacated June 20, 2017
Re-Submitted October 13, 2017
Pasadena, California

Before: CLIFTON and FRIEDLAND, Circuit Judges, and DONATO,** District
Judge.

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.
\*\*       The Honorable James Donato, United States District Judge for the
Northern District of California, sitting by designation.

Plaintiff Emeka Ndigwe appeals the dismissal of his lawsuit against Defendant Allstate Indemnity Company over uninsured motorist coverage for an auto accident. At our request after oral argument, the district court clarified that the case was dismissed as a sanction under Federal Rule of Civil Procedure 41(b). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

In the case's original posture before us, the specific basis for the dismissal was somewhat unclear. On October 22, 2015, the district court entered a first dismissal order under Rule 12(b)(6), and ordered Ndigwe to file an amended complaint by November 2, 2015. The court expressly cautioned Ndigwe "that failure to timely file a First Amended Complaint may result in this action being dismissed without prejudice for failure to prosecute and/or failure to comply with a court order" under Rule 41(b). Ndigwe did not file an amended complaint or advise the district court that he did not intend to amend. On November 9, 2015, the district court entered a second and final order dismissing the case without prejudice "for lack of prosecution and failure to comply with the orders of the court."

We asked the district court to clarify whether it intended to dismiss the complaint as a sanction under Rule 41(b) or for failure to state a claim under Rule 12(b)(6). The district court responded with a "Clarification Order" confirming that the action was dismissed as a sanction under Rule 41(b) for Ndigwe's failure to

comply with the order requiring amendment or to otherwise prosecute the case. *See Harris v. Mangum*, 863 F.3d 1133, 1142 (9th Cir. 2017) ("When a district court dismisses an action because the plaintiff has not filed an amended complaint after being given leave to do so and has not notified the court of his intention not to file an amended complaint, we may deem the dismissal to be for failure to comply with a court order based on Federal Rule of Civil Procedure 41(b)." (citations omitted)). The district court also confirmed that the final dismissal was without prejudice.

We review for abuse of discretion the dismissal of an action for failure to comply with the district court's order requiring submission of an amended complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992). Ndigwe's failure to respond in any way to the district court's amendment order warranted dismissal. A plaintiff's inaction in the face of the court's "ultimatum -- either by amending the complaint or by indicating to the court that it will not do so -- is properly met with the sanction of a Rule 41(b) dismissal." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004).

The specific factors applied to a Rule 41(b) dismissal point to the same result. Before dismissing a case as a sanction, a district court should consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public

3

policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (internal quotation marks omitted). We may affirm when our independent review of the record indicates that the district court did not abuse its discretion under these factors, even though the court may not have made explicit findings at the time of dismissal. *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (internal citation omitted). While the district court's final dismissal order did not address the factors, its clarification order discussed them in detail, and we find nothing in the record indicating that the district court abused its discretion.

Consequently, we find that the district court did not abuse its discretion in dismissing Ndigwe's case under Rule 41(b). We express no opinion about the merits of his claims against Allstate or the district court's analysis under Rule 12(b)(6).

**AFFIRMED.**

4

No. 15-56813 *Ndigwe v. Allstate Indemnity Co.*

CLIFTON, Circuit Judge, concurring:

I agree with the majority that the district court had the authority to dismiss the action as a sanction under Rule 41(b). I therefore concur entirely in the result and reasoning expressed in the majority's disposition.

I write separately, however, to express my concern with the district court's underlying interpretation of California insurance law; namely, that Ndigwe failed to allege uninsured motorist coverage under California Insurance Code section 11580.2(b) and the corresponding uninsured motorist provisions in his insurance policy with Allstate. The application of California insurance law is ultimately a question for the California courts, but in my individual view the district court's interpretation of the policy and of California law was not persuasive and should not be taken for granted if and when the question arises again. In particular, I believe that the definition of "uninsured vehicle" in section 11580.2(b) includes a motor vehicle that has applicable insurance if the insurer either denies coverage or refuses to admit coverage.

Because the merits of Ndigwe's claim rest on conflicting interpretations of the uninsured motorist provisions in his insurance policy, it is helpful to first briefly summarize the background California law governing the interpretation of

1

insurance policies. As relevant here, there are two principles that courts must follow when interpreting insurance policies under California law.

First, legitimate uncertainties regarding insurance coverage must be interpreted in favor of the insured. Specifically, "[California] generally resolve[s] ambiguities in favor of coverage. Similarly, [California] generally interpret[s] the coverage clauses of insurance policies broadly, in order to protect the objectively reasonable expectations of the insured." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 667 (1995) (citations and internal quotation marks omitted). This principle of interpretation is based on dual principles of contract law and fairness. Because the insurance company ordinarily drafts its policies, and because the insured party ordinarily has little to no opportunity to bargain for modifications of the policy language, policy language must be construed against the drafting insurance company. *Id.*

Second, insurance policies must be interpreted in accordance with their plain and common meaning. Under this principle, "the policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (Cal. Ct. App. 1984) (citation and internal quotation marks omitted). "[I]f semantically permissible, the contract will be given such construction as will fairly

2

achieve its object of providing indemnity for the loss to which the insurance relates." *Id.* (citations and internal quotation marks omitted).

Turning now to the specific policy provision at issue here, Ndigwe's policy provides coverage for injuries caused by car accidents involving an "uninsured auto." The policy defines "uninsured auto" to include any "motor vehicle for which the insurer denies coverage." This definition is based on the "uninsured motor vehicle" definitions in section 11580.2(b), which are incorporated by reference into all insurance policies in California. *See Cal. Cas. Indemn. Exch. v. Hoskin*, 82 Cal. App. 3d 789, 794 (Cal. Ct. App. 1978) ("Section 11580.2 becomes a part of every insurance policy as if it were written into its provisions.").

As relevant here, section 11580.2(b) defines an "uninsured motor vehicle" to include (1) any motor vehicle for which there is no liability insurance applicable at the time of the accident, as well as (2) any motor vehicle for which there is liability insurance applicable at the time of the accident but the insurance company later denies coverage thereunder. *See* Cal. Ins. Code § 11580.2(b) ("As used in this section, 'uninsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance . . . applicable at the time of the accident, or there is the applicable insurance . . . but the company writing the insurance . . . denies coverage

3

thereunder."). To apply the relevant provisions of the statute, we can understand section 11580.2(b) to ask three questions to determine if there is uninsured motorist coverage: (1) whether the tortfeasor had liability insurance; (2) whether the insurance was applicable at the time of the accident; and (3) if the insurance was applicable at the time of the accident, whether the tortfeasor's insurance company later denied coverage under the policy.

In determining that Ndigwe failed to plausibly allege uninsured motorist coverage, the district court held that, under section 11580.2(b), there can be no such coverage when, as here, the tortfeasor had insurance at the time of the accident, but its insurance company later denies coverage for a third-party claim arising out of the accident. In doing so, the district court relied primarily on the California Court of Appeal's decisions in *California Casualty Indemnity Exchange v. Hoskin*, 82 Cal. App. 3d 789, 797 (Cal. Ct. App. 1978), and *Denny v. St. Paul Guardian Insurance Co.*, 196 Cal. App. 3d 73, 77-78 (Cal. Ct. App. 1987), which held that, for purposes of section 11580.2(b), there is no uninsured motorist coverage when the insured party's covered vehicle has no "applicable" insurance at the time of the accident due to exclusions in that party's insurance policy.

The district court's reasoning, however, is not well supported by California law.

4

As discussed above, California law requires that we interpret the terms of Ndigwe's policy in accordance with their plain meaning, construing ambiguities in favor of Ndigwe. In light of these interpretive principles, it appears that Ndigwe did in fact allege uninsured motorist coverage here. To review, Ndigwe's policy defines an "uninsured auto" to include any "motor vehicle for which the insurer denies coverage." Similarly, section 11580.2(b) defines an "uninsured motor vehicle" to include any motor vehicle for which "there is the applicable insurance . . . but the company writing the insurance . . . denies coverage thereunder." That literally describes what allegedly happened here. Ndgiwe was rear-ended by another driver. At the time of the accident, the other car was insured by Alliance United Insurance Company (Alliance). Alliance, however, later denied coverage for the accident, purportedly because its insured failed to cooperate in Alliance's investigation into the accident. As alleged, these facts are sufficient to trigger uninsured motorist coverage under the terms of Ndigwe's policy.

It is not at all surprising that Ndigwe had a reasonable expectation that the uninsured motorist coverage that he paid for would cover his situation. Ndigwe had insurance, he was in an accident that wasn't his fault, he suffered damages, the driver responsible for the accident did not cover Ndigwe's damages with insurance, for a reason that wasn't Ndigwe's fault, either, and yet it was Ndigwe who was left

5

holding the bag.

Ndigwe's interpretation is consistent with that of Robert C. Clifford's *California Uninsured Motorist Law*, a "leading treatise on [California] insurance law." *Farmers Ins. Exch. v. Kim*, 2013 WL 1261746, at \*3 (Cal. Ct. App. 2013) (unpublished). As relevant here, the treatise provides the following analysis regarding uninsured motorist claims arising out of a coverage dispute between the tortfeasor and his insurance company:

> In Ins[urance] Code § 11580.2(b), the definition of "uninsured vehicle" includes a motor vehicle that has applicable insurance if the insurer either denies coverage or refuses to admit coverage except conditionally or with reservation. The purpose of this definition is to give the injured party a right to proceed under an uninsured motorist provision if there is a coverage dispute between the tortfeasor and his or her insurer. . . . If the adverse driver's liability insurer maintains that its policy does not furnish coverage for the accident, the "insured" vehicle is an "uninsured" motor vehicle.

1 Clifford, Cal. Uninsured Motorist Law § 6.70 (2017).

In the same section, the treatise provides that when the tortfeasor's insurance company denies coverage for failure to cooperate in the investigation of the accident, the tortfeasor becomes an uninsured motorist for purposes of section 11580.2(b):

> A common situation involving the denial of coverage by the tortfeasor's insurer is when the tortfeasor breaches the cooperation clause of the policy and refuses to assist in his defense. . . . Clearly, if the insurer denies coverage because of the breach of the cooperation clause, the

vehicles becomes "uninsured."

*Id.* That is exactly the situation here.

The precedents on which the district court relied, *Hoskin* and *Denny*, do not speak to this situation. As another federal district court in California has observed, *Hoskin* did not discuss the specific provision in section 11580.2(b) at issue in this case: that is, whether the tortfeasor's insurance company "denie[d] coverage." *Safeco Ins. Co. of America v. Nadalsky*, 2013 WL 12114613, at *3 (C.D. Cal. Feb. 4, 2013) (unpublished). Rather, *Hoskin* and *Denny* instead interpreted the provision in section 11580.2(b) that addresses whether the tortfeasor had insurance "applicable at the time of the accident."

In interpreting this provision, *Hoskin* and *Denny* held only that "the question whether a liability policy is 'applicable' at the time of the accident is resolved without regard to policy exclusions precluding payment to an injured insured." *Farmers Ins. Exch. v. Allen*, 2005 WL 668821, at *6 (Cal. Ct. App. 2005) (unpublished). For example, in *Hoskin*, the insured claimant (a mother) was denied uninsured motorist coverage for injuries sustained in a car accident while she was a passenger in her car that was being driven by her son. *Hoskin*, 82 Cal. App. 3d at 791-92. Similarly, in *Denny*, the insured claimant was denied uninsured motorist coverage for injuries sustained in a car accident while she was a passenger

7

in a substitute vehicle that she was using as her own car at the time. *Denny*, 196 Cal. App. 3d at 75. In both cases, the court held that the claimants could not establish uninsured motorist coverage for their injuries because there were specific policy exclusions in the claimants' own respective policies that precluded coverage for any injuries to the named insured or members of their household. *Hoskin*, 82 Cal. App. 3d at 793, 797-98; *Denny*, 196 Cal. App. 3d at 75, 78. In rejecting coverage, *Hoskins* and *Denny* were aimed at enforcing specific policy exclusions in the claimants' own policies: namely, by prohibiting claimants from "attempt[ing] to utilize exclusions within the liability sections of an insured's own automobile policy to trigger the insured's uninsured motorist coverage." *Allen*, 2005 WL 668821, at *5.

That was not the situation here, however. Unlike the claimants in *Hoskin* and *Denny*, Ndigwe was not attempting to side-step his own policy exclusions by instead seeking coverage under the uninsured motorist provisions in his policy. *See Hoskin*, 82 Cal. App. 3d at 797 (rejecting claim for uninsured motorist coverage "where a car is insured under the general terms of a policy" but the policy is found "inapplicable to the specific claim created by the accident"). Rather, Ndigwe sought uninsured motorist coverage because the car that rear-ended him was insured at the time of the accident, but Alliance later denied coverage through

8

no fault of Ndigwe's.  *Hoskin* and *Denny* simply do not apply to these facts, and I do not believe that it was correct to extend *Hoskin* and *Denny* in the manner done so by the district court.

That does not change the outcome of this case, because the dismissal of Ndigwe's complaint is affirmed based on the failure to respond to the dismissal without prejudice without either an amended complaint or a notice to the district court that Ndigwe elected to stand on his prior filing.  But our affirmance of the ultimate dismissal should not be understood to affirm the insurance law reasoning behind the initial dismissal.  I, for one, conclude that Ndigwe should have received benefits under the uninsured motorist coverage.