CLIFTON, Circuit Judge, concurring: I agree with the majority that the district court, had the authority to dismiss the action as a sanction under Rule 41(b). I therefore concur entirely in the result and reasoning expressed in the majority’s disposition. I write separately, however, to express my concern with the district court’s underlying interpretation of California insurance law; namely, that Ndigwe failed to allege uninsured motorist coverage under California Insurance Code section 11580.2(b) and the corresponding uninsured motorist provisions in his insurance policy with Allstate. The application of California insurance law is ultimately a question for the California courts, but in my individual view the district court’s interpretation of the policy and of California law was not persuasive and should not be taken for granted if and when the question arises again. In particular, I believe that the definition of “uninsured vehicle” in section 11580.2(b) includes a motor vehicle that has applicable insurance if the insurer either denies coverage or refuses to admit coverage. Because the merits of Ndigwe’s claim rest on conflicting interpretations of the uninsured motorist provisions in his insurance policy, it is helpful to first briefly summarize the background California law governing the interpretation of insurance policies. As relevant here, there are two principles that courts must follow when interpreting insurance policies under California law. First, legitimate uncertainties regarding insurance coverage must be interpreted in favor of the insured. Specifically, “[California] generally resolve[s] ambiguities in favor of coverage. Similarly, [California] generally interprets] the coverage clauses of insurance policies broadly, in order to protect the objectively reasonable expectations of the insured.” Montrose Chem. Corp. v. Admiral Ins. Co., 10 Cal. 4th 645, 667, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995) (citations and internal quotation marks omitted). This principle of interpretation is based on dual principles of contract law and fairness. Because the insurance company ordinarily drafts its policies, and because the insured party ordinarily has little to no opportunity to bargain for modifications of the policy language, policy language must be construed against the drafting insurance company. Id. Second, insurance policies must be interpreted in accordance with their plain and common meaning. Under this principle, “the policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert.” Delgado v. Heritage Life Ins. Co., 157 Cal. App. 3d 262, 271, 203 Cal.Rptr. 672 (1984) (citation and internal quotation marks omitted). “[I]f semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.” Id. (citations and internal quotation marks omitted). Turning now to the specific policy provision at issue here, Ndigwe’s policy provides coverage for injuries caused by car accidents involving an “uninsured auto.” The policy defines “uninsured auto” to include any “motor vehicle for which the insurer denies coverage.” This definition is based on the “uninsured motor vehicle” definitions in section 11580.2(b), which are incorporated by reference into all insurance policies in California. See Cal. Cas. Indemn. Exch. v. Hoskin, 82 Cal. App. 3d 789, 794, 147 Cal.Rptr. 348 (1978) (“Section 11580.2 becomes a part of every insurance policy as if it were written into its provisions.”). As relevant here, section 11580.2(b) defines an “uninsured motor vehicle” to include (1) any motor vehicle for which there is no liability insurance applicable at the time of the accident, as well as (2) any motor vehicle for which there is liability insurance applicable at the time of the accident but the insurance company later denies coverage thereunder. See Cal. Ins. Code § 11580.2(b) (“As used in this section, ‘uninsured motor vehicle’ means a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance ... applicable at the time of the accident, or there is the applicable insurance ... but the company writing -the insurance ... denies coverage thereunder”). To apply the relevant provisions of the statute, we can understand section 11580.2(b) to ask three questions to determine if there is uninsured motorist coverage: (1) whether the tortfeasor had liability insurance; (2) whether the insurance was applicable at the time of the accident; and (3) if the insurance was applicable at the time of the accident, whether the tortfeasor’s insurance company later denied coverage under the policy. In determining that Ndigwe failed to plausibly allege uninsured motorist coverage, the district court held that, under section 11580.2(b), there can be no such coverage when, as here, the tortfeasor had insurance at the time of the accident, but its insurance company later denies coverage for a third-party claim arising out of the accident. In doing so, the district court relied primarily on the California Court of Appeal’s decisions in California Casualty Indemnity Exchange v. Hoskin, 82 Cal. App. 3d 789, 797, 147 Cal.Rptr. 348 (1978), and Denny v. St. Paul Guardian Insurance Co., 196 Cal. App. 3d 73, 77-78, 241 Cal.Rptr. 520 (1987), which held that, for purposes of section 11580.2(b), there is no uninsured motorist coverage when the insured party’s covered vehicle has no “applicable” insurance at the time of the accident due to exclusions in that party’s insurance policy. The district court’s reasoning, however, is not well supported by California law. As discussed above, California law requires that we interpret the terms of Ndigwe’s policy in accordance with then-plain meaning, construing ambiguities in favor of Ndigwe. In light of these interpretive principles, it appears that Ndigwe did in fact allege uninsured motorist coverage here. To review, Ndigwe’s policy defines an “uninsured auto” to include any “motor vehicle for which the insurer denies coverage.” Similarly, section 11580.2(b) defines an “uninsured motor vehicle” to include any motor vehicle for which “there is the applicable insurance ... but the company writing the insurance ... denies coverage thereunder.” That literally describes what allegedly happened here. Ndigwe was rear-ended by another driver. At the time of the accident, the other car was insured by Alliance United Insurance Company (Alliance). Alliance, however, later denied coverage for the accident, purportedly because its insured failed to cooperate in Alliance’s investigation into the accident. As alleged, these facts are sufficient to trigger uninsured motorist coverage under the terms of Ndigwe’s policy. It is not at all surprising that Ndigwe had a reasonable expectation that the uninsured motorist coverage that he paid for would cover his situation. Ndigwe had insurance, he was in an accident that wasn’t his fault, he suffered damages, the driver responsible for the accident did not cover Ndigwe’s damages with insurance, for a reason that wasn’t Ndigwe’s fault, either, and yet it was Ndigwe who was left holding the bag. Ndigwe’s interpretation is consistent with that of Robert C. Clifford’s California Uninsured Motorist Law, a “leading treatise on [California] insurance law.” Farmers Ins. Exch. v. Kim, 2013 WL 1261746, at *3 (Cal. Ct. App. 2013) (unpublished). As relevant here, the treatise provides the following analysis regarding uninsured motorist claims arising out of a coverage dispute between the tortfeasor and his insurance company: In Insurance] Code § 11580.2(b), the definition of “uninsured vehicle” includes a motor vehicle that has applicable insurance if the insurer either denies coverage or refuses to admit coverage except conditionally or with reservation. The purpose of this definition is to give the injured party a right to proceed under an uninsured motorist provision if there is a coverage dispute between the tortfeasor and his or her insurer.... If the adverse driver’s liability insurer maintains that its policy does not furnish coverage for the accident, the “insured” vehicle is an “uninsured” motor vehicle. 1 Clifford, Cal. Uninsured Motorist Law § 6.70 (2017). In the same section, the treatise provides that when the tortfeasor’s insurance company denies coverage for failure to cooperate in the investigation of tHe accident, the tortfeasor becomes an uninsured motorist for purposes of section 11580.2(b): A common situation involving the denial of coverage by the tortfeasor’s insurer is when the tortfeasor breaches the cooperation clause of the policy and refuses to assist in his defense.... Clearly, if the insurer denies coverage because of the breach of the cooperation clause, the vehicles becomes “uninsured.” Id. That is exactly the situation here. The precedents on which the district court relied, Hoskin and Denny, do not speak to this situation. As another federal district court in California has observed, Hoskin did not discuss the specific provision in section 11580.2(b) at issue in this case: that is, whether the tortfeasor’s insurance company “denie[d] coverage.” Safeco Ins. Co. of America v. Nadalsky, 2013 WL 12114613, at *3 (C.D. Cal. Feb. 4, 2013) (unpublished). Rather, Hoskin and Denny instead interpreted the provision in section 11580.2(b) that addresses whether the tortfeasor had insurance “applicable at the time of the accident.” In interpreting this provision, Hoskin and Denny held only that “the question whether a liability policy is ‘applicable’ at the time of the accident is resolved without regard to policy exclusions precluding payment to an injured insured.” Farmers Ins. Exch. v. Allen, 2005 WL 668821, at *6 (Cal. Ct. App. 2005) (unpublished). For example, in Hoskin, the insured claimant (a mother) was denied uninsured motorist coverage for injuries sustained in a car accident while she was a passenger in her ear that was being driven by her son. Hoskin, 82 Cal. App. 3d at 791-92, 147 Cal.Rptr. 348. Similarly, in Denny, the insured claimant was denied uninsured motorist coverage for injuries sustained in a car accident while she was a passenger in a substitute vehicle that she was using as her own car at the time. Denny, 196 Cal.App. 3d at 75, 241 Cal.Rptr. 520. In both cases, the court held that the claimants could not establish uninsured motorist coverage for their injuries because there were specific policy exclusions in the claimants’ own respective policies that precluded coverage for any injuries to the named insured or members of their household. Hoskin, 82 Cal. App. 3d at 793, 797-98, 147 Cal.Rptr. 348; Denny, 196 Cal. App. 3d at 75, 78, 241 Cal.Rptr. 520. In rejecting coverage, Hoskins and Denny were aimed at enforcing specific policy exclusions in the claimants’ own policies: namely, by prohibiting claimants from “attempt[ing] to utilize exclusions within the liability sections of an insured’s own automobile policy to trigger the insured’s uninsured motorist coverage.” Allen, 2005 WL 668821, at *5. That was not the situation here, however. Unlike the claimants in Hoskin and Denny, Ndigwe was not attempting to side-step his own policy exclusions by instead seeking coverage under the uninsured motorist provisions in his policy. See Hoskin, 82 Cal. App. 3d at 797, 147 Cal. Rptr. 348 (rejecting claim for uninsured motorist coverage “where a car is insured under the general terms of a policy” but the policy is found “inapplicable to the specific claim created by the accident”), Rather, Ndigwe sought uninsured motorist coverage because the car that rear-ended him was insured at the time of the accident, but Alliance later denied coverage through no fault of Ndigwe’s. Hoskin and Denny simply do not apply to these facts, and I do not believe that it was correct to extend Hoskin and Denny in the manner done so by the district court. That does not change the outcome of this case, because the dismissal of Ndig-we’s complaint is affirmed based on the failure to respond to the dismissal without prejudice without either an amended complaint or a notice to the district court that Ndigwe elected to stand on his prior filing. But our affirmance of the ultimate dismissal should not be understood to affirm the insurance law reasoning behind the initial dismissal. I, for one, conclude that Ndigwe should have received benefits under the uninsured motorist coverage.